UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE ROOST PROJECT, LLC, a California limited liability company,<br><br>  Plaintiff/Counterdefendant,<br><br>vs.<br><br>ANDERSEN CONSTRUCTION COMPANY, an Oregon corporation,<br><br>  Defendant/Counterclaimant. | Case No. 1:18-cv-00238-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Plaintiff's motion in limine to exclude expert witness testimony and Defendant's related motion to strike declaration. (Dkt. 83, 90.)[1] On October 5, 2020, the Court heard oral argument on the motions. After careful consideration of the record, the parties' briefing and supporting materials, and oral argument, the Court will grant in part and deny in part the motion to exclude expert witness testimony and will deem the motion to strike moot.

---

[1] There are other motions pending before the Court that will be addressed in separate orders.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a dispute regarding the rights, obligations, and liabilities of the parties arising out of and relating to construction of The Fowler building in downtown Boise, Idaho. In December 2015, the Roost Project, LLC (Roost) and Andersen Construction Company (ACCO) entered into a contract (the Construction Agreement) to build The Fowler. The project was delayed for a host of different reasons resulting in The Fowler being finished eight months after the initial contract completion date. The parties disagree over the respective faults and liabilities for the project delays and resulting damages.

Roost initiated this action on May 30, 2018, raising several claims against ACCO: breach of the Construction Agreement; breach of the implied covenant of good faith and fair dealing; fraud; violation of the Idaho Consumer Protection Act (ICPA); and breach of the implied warranty of workmanship. (Dkt. 1, 10.)[2] ACCO denies Roost's claims and, on August 21, 2018, filed counterclaims against Roost for 1) breach of contract and the covenant of good faith and fair dealing; and 2) unjust enrichment and quantum meruit. (Dkt. 22.) A jury trial is scheduled to commence on November 2, 2020.

On August 27, 2020, Roost filed the instant motion in limine seeking to exclude the expert witness testimony of Jim Stoner, ACCO's retained construction expert. (Dkt. 83.) Roost's motion challenges the admissibility of Stoner's testimony under the

---

[2] The Court has jurisdiction over these proceedings based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702. In turn, ACCO filed a motion to strike the declaration of Stephen P. Warhoe filed in support of Roost's motion to exclude expert witness testimony. (Dkt. 90.) The Court finds as follows.

## LEGAL STANDARD

The standard for evaluating the admissibility of expert witness testimony was established in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), and its progeny, and is now set forth in Rule 702 of the Federal Rules of Evidence. *See Cusack v. Bendpack, Inc.*, No. 4:17-CV-00003-DCN, 2018 WL 3939318, at *1 (D. Idaho Aug. 15, 2018). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In making this evaluation, the Court acts as a gatekeeper to "assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quotation marks and citation omitted). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565.

MEMORANDUM DECISION AND ORDER - 3

Here, Roost does not contest Stoner's qualifications or that argue that his opinions are not relevant. The only question presented on this motion is whether Stoner's opinions are reliable. Under Rule 702, a qualified witness with specialized knowledge helpful to the jury may offer expert testimony where: (1) the opinion is based upon sufficient facts or data, (2) the opinion is the product of reliable principles and methods; and (3) the witness has applied those principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592–93; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

This reliability inquiry is a flexible one. *Kumho Tire*, 137 U.S. at 141. The Supreme Court has identified several non-exclusive factors for courts to consider when determining the reliability of proffered expert witness testimony. *See Daubert*, 509 U.S. at 593–95. These include: "whether the theory or technique employed by the expert is generally accepted in the scientific community; whether it's been subjected to peer review and publication; whether it can be and has been tested; and whether the known or potential rate of error is acceptable." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (*Daubert II*). Courts also consider whether experts are testifying "about matters growing naturally" out of their own independent research, or if "they have developed their opinions expressly for purposes of testifying." *Id*. at 1317.

The Court's analysis focuses "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Court's "task...is to analyze not what the experts say, but what basis they have for saying it." *Wendell v.*

*GlaxoSmithKlein LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (quoting *Daubert II*, 43 F.3d at 1316).

Evaluating the admissibility of expert witness testimony for relevance and reliability is distinct from challenges to the testimony made by impeachment or cross-examination. *See City of Pomona v. SQMN. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (The court must "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *United States v. Wells*, 879 F.3d 900, 933 (9th Cir. 2018) (quoting *Daubert*, 509 U.S. at 596). Challenges going to the weight of the evidence and credibility determinations are reserved for the finder of fact. *City of Pomona*, 750 F.3d at 1044.

## ANALYSIS

**1.      Roost's Motion to Exclude Expert Witness Testimony of Jim Stoner**

Stoner is the President and Chief Operating Officer of Hainline, a Seattle-based construction consulting firm hired by ACCO to analyze The Fowler project. (Dkt. 39-4.) Stoner was the principal author of a report prepared by Hainline entitled "The Fowler Apartments" dated August 2, 2019 ("Hainline Report"). Hainline performed a forensic analysis of The Fowler construction schedules for the purpose of determining the causality and to apportion responsibility for the delays. (Dkt. 39-4.) The Hainline Report generally concludes ACCO was entitled to 224 additional days to complete The Fowler and attributes nearly all of the liability for the project delays to Roost. (Dkt. 39-4.)

MEMORANDUM DECISION AND ORDER - 5

On this motion, Roost argues the Hainline Report, and Stoner's correlating testimony, are unreliable because: 1) they are based on insufficient facts or data; and 2) do not reliably apply critical path method (CPM) principles to the facts of the case. Specifically, Roost contends Hainline failed to consider the terms of the Construction Agreement and other relevant facts; unreliably selected and analyzed twenty-two (22) schedules; failed to explain how the CPM principles were applied; and provided no explanation for the conclusions and opinions stated in the report. (Dkt. 83.) ACCO maintains the Hainline Report is reliable and that Roost's assertions go to the weight and credibility of the opinions, not their admissibility. (Dkt. 89.) If Roost's motion to exclude expert witness testimony is denied, the parties agree Stoner may not opine as to an ultimate issue – whether adverse weather and labor issues constitute a force majeure event under the Construction Agreement.

For the reasons that follow, the Court finds the Hainline report is sufficiently reliable to allow Stoner to testify based on the conclusions stated therein, but that Stoner may not opine as to this ultimate issue.

    A.    **The Hainline Report is Reliable**

        i.    **The Hainline Report is Based on Sufficient Facts and Data**

The Hainline Report clearly identifies the materials relied upon, listing the source documents reviewed and considered to include the Construction Agreement, project schedules, weekly meeting minutes, contract documents, reports, and emails. (Dkt. 39-4 at 1.) The report discusses the facts and circumstances relating to the project and the resulting delays; namely, the terms of the Construction Agreement, project schedules,

weather, labor shortage, site access, and the conduct of the parties. These materials, facts, and data are directly relevant to Hainline's analysis of the causes and apportionment of responsibility for the delays in completion of The Fowler, and are sufficient to support the conclusions stated in the report.

While Roost disagrees with Hainline's evaluation and interpretation of the facts and materials, primarily the terms of the Construction Agreement, the existence of contrary facts or disagreement regarding the factual basis of an expert report do not render the opinion excludable. "The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility…it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004). Here, the Hainline Report sets forth facts and data to support the conclusions reached therein. The weight and credibility of Stoner's testimony is for the jury to decide at trial.

### ii. The Hainline Report Applied Reliable Principles and Methods

The report is the product of reliable principles and methods which Hainline reliably applied to the relevant facts. Hainline performed a CPM delay analysis of twenty-two (22) selected schedules in conformance with AACEi[3] Recommended Practice No. 29R-03 (RP29R03). Hainline then utilized the half-step CPM analysis method to

---

[3] AACEi refers to Association for the Advancement of Cost Engineering International.

MEMORANDUM DECISION AND ORDER - 7

bifurcate schedule progress gain or loss from logic changes gain or loss in the schedule. (Dkt. 39-4 at 5.)

Roost does not challenge the reliability of the analytical methods applied by Hainline but, instead, faults Hainline for not explaining how it reached its conclusions using those methods. (Dkt. 95.) The Court disagrees. The Hainline Report adequately sets forth Hainline's analysis and conclusions based on its review of the facts and data relevant to the project delays.

The report explains Hainline's application of the analytical methods, stating that the twenty-two (22) select schedules were chosen for analysis because they represent approximately a monthly update cycle and have few missing predecessors. (Dkt. 39-4 at 5); (*FNE 5* at Dkt. 83-2, Ex. 1)[4] The report informs that the half-step analysis was split into four time periods due to the nature of the schedule updates and the impact of the weather delay. The results of the half-step delay analysis for each of the four time periods is summarized in a chart attached at FNE 7 to the report. (Dkt. 39-4 ); (*FNE 7* at Dkt. 83-2, Ex. 2.)

The Hainline Report next discusses the facts and circumstances that delayed the project during each of the four time periods, e.g., conduct by the owner/design team, winter weather, and other relevant events. For instance, the report explains the

---

[4] The schedules used by Stoner are in the form of native Microsoft Project format files (.mpp). Roost has filed a motion for sanctions due to spoliation relating the .mpp files that the Court will address in a separate order.

significance and number of design changes made by Roost's architect which prompted several change requests and requests for information and contributed to the delay in completion of the project. The Hainline Report concludes Roost's handling of the design changes and "unreasonable" denial of ACCO's requests for extensions resulted in increased costs and a large disparity between the time needed to complete the project and the time granted by Roost. (Dkt. 39-4 at 8.) Similarly, the report discusses the impacts of the winter weather, labor shortages, and site access on the project's schedule and delayed completion. These explanations adequately set forth Hainline's reasoning and are sufficient to support the conclusions stated in the report.

Unlike the caselaw cited by Roost where the opinions were found to be "devoid of factual or analytical support" and rested only on the "say-so" of the expert, here, Hainline sufficiently explains its analysis and reasoning for apportioning a majority of the project delays to Roost. The Hainline Report identifies the methods of analysis applied, discusses the project materials and facts forming the bases for the analysis, and sufficiently explains the reasons for the conclusions. Hainline's reasoning is adequate to logically connect the facts and data relied upon to the conclusions reached.

While Roost disagrees with the Hainline Report's conclusions and has pointed out possible weaknesses in the analysis, those challenges go to the weight and credibility of the evidence and are matters appropriately addressed on cross-examination and resolved by the trier of fact. Accordingly, the motion to exclude the expert witness testimony of Stoner will be denied.

### B. Opinion Testimony on an Ultimate Issue

The parties agree that Stoner may not opine regarding whether adverse weather and labor issues constitute a force majeure event under the Construction Agreement. (Dkt 83, 89, 95.) The parties also agree, however, that Stoner should be permitted to reference the Construction Agreement's definition of force majeure, address the labor shortage and weather events, and explain the effect those occurrences had on ACCO's ability to perform under the contract. (Dkt. 89, 95.)

The Court concurs with the parties' understanding regarding the borders of opinion testimony on an ultimate issue under Rule 704. Expert testimony embracing an ultimate issue that the jury will decide at trial is not per se improper. *Hangarter*, 373 F.3d at 1016; Fed. R. Evid. 704(a). An expert may not, however, testify as to what the law is or make legal conclusions. *Id.* "[A]n expert may not state his or her opinion as to legal standards, nor may he or she state legal conclusions drawn by applying the law to the facts." *Gable v. Nat'l Broadcasting Co.*, 727 F.Supp.2d 815, 835 (C.D. Cal. 2010); *Nationwide Transport Finance v. Cass Information Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("[I]nstructing the jury as to the applicable law is the distinct and exclusive province of the court."). The motion to exclude expert witness testimony will be granted with regard to Stoner's testimony on the ultimate issue as identified by the parties. Stoner may not offer a legal opinion regarding whether ACCO is entitled to a force majeure defense under the Construction Agreement. Stoner may testify, however, regarding matters relating to that ultimate issue as reflected in the parties briefing.

**2.     ACCO Motion to Strike Declaration of Stephen P. Warhoe**

ACCO filed a motion strike the declaration of Stephen P. Warhoe filed in support of Roost's motion to exclude expert witness testimony. (Dkt. 90.) ACCO argues Warhoe's declaration is an untimely disclosure of expert rebuttal and should be stricken from consideration of Roost's motion to exclude expert witness testimony. In light of the ruling on Roost's motion articulated above, the Court finds ACCO's motion to strike the declaration of Stephen P. Warhoe is moot.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)   Plaintiff's Motion to Exclude Expert Witness (Dkt. 83) is **GRANTED IN PART AND DENIED IN PART**.

2)   Defendant's Motion to Strike Declaration (Dkt. 90) is **MOOT**.

DATED: October 16, 2020

Honorable Candy W. Dale
United States Magistrate Judge