UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE ROOST PROJECT, LLC, a California limited liability company,<br><br>          Plaintiff/Counterdefendant,<br><br>vs.<br><br>ANDERSEN CONSTRUCTION COMPANY, an Oregon corporation,<br><br>          Defendant/Counterclaimant. | Case No. 1:18-cv-00238-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Plaintiff's motion for sanctions due to spoliation of evidence. (Dkt. 84.)[1] The motion is fully briefed and at issue. On October 5, 2020, the Court heard oral argument on the motion. After careful consideration of the record, the parties' briefing and supporting materials, and oral argument, the Court will deny the motion for the reasons explained below.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a dispute regarding the rights, obligations, and liabilities of the parties relating to construction of The Fowler building in downtown Boise, Idaho.

---

[1] There are other pending motions before the Court that will be addressed in separate orders.

The Roost Project, LLC (Roost) and Andersen Construction Company (ACCO) entered into a contract (the Construction Agreement) to build The Fowler in December 2015. The project was delayed for a host of different reasons resulting in The Fowler being finished eight months after the initial contract completion date. The parties disagree over the respective faults and liabilities for the project delays and resulting damages.

As a result, Roost initiated this action raising several claims against ACCO: breach of the Construction Agreement; breach of the implied covenant of good faith and fair dealing; fraud; violation of the Idaho Consumer Protection Act; and breach of the implied warranty of workmanship. (Dkt. 1, 10.) ACCO denies those claims and, on August 21, 2018, filed counterclaims for 1) breach of contract and the covenant of good faith and fair dealing; and 2) unjust enrichment and quantum meruit. (Dkt. 22.) A jury trial is scheduled to commence on November 2, 2020.

In the motion presently before the Court, Roost argues ACCO failed to preserve electronically stored information (ESI), the loss of which is prejudicial to Roost. Roost requests imposition of certain sanctions relating to the presentation of evidence at trial pursuant to Federal Rule of Civil Procedure 37(e)(1).

## LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve [evidence,] ... in pending or reasonably foreseeable litigation." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F.Supp.3d 1040, 1051-52 (S.D. Cal. 2015) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). Spoliation of ESI evidence is governed by Federal Rule of Civil Procedure 37(e) which states:

MEMORANDUM DECISION AND ORDER - 2

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).[2] Under Rule 37(e), the Court assesses four factors: 1) whether the information qualifies as ESI; 2) whether the ESI is "lost" and "cannot be restored or replaced through additional discovery;" 3) whether the ESI "should have been preserved in the anticipation or conduct of litigation;" and 4) whether the responding party failed to take reasonable steps to preserve the ESI. *Colonies Partners, L.P. v. County of San Bernardino*, No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444, at * 3 (C.D. Cal. Feb. 27, 2020); Fed. R. Civ. P. 37(e).

If these factors are satisfied, and the Court finds there is "prejudice to another party from [the] loss of the [ESI]," the Court may "order measures no greater than

---

[2] Courts formerly imposed spoliation sanctions based on both their inherent authority and Rule 37. Following the 2015 Amendments to the Federal Rules, Rule 37(e) is the exclusive remedy for the loss of ESI. *See* Fed. R. Civ. P. 37(e), Adv. Comm. Notes to 2015 Amendment; *Stevens v. Brigham Young Univ.-Idaho*, No. 4:16-CV-530-BLW, 2019 WL 6499098, at *3 (D. Idaho Dec. 3, 2019). Accordingly, the Court considers the motion only under Rule 37(e).

necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the party that was required to preserve the ESI "acted with the intent to deprive another party of the information's use in the litigation," Rule 37(e)(2) authorizes the following sanctions: 1) a presumption that the lost information was unfavorable to the non-moving party; 2) instructing the jury that it may or must presume the information was unfavorable to the non-moving party; or 3) dismiss the action or enter a default judgment.

"'The applicable standard of proof for spoliation in the Ninth Circuit appears to be by a preponderance of the evidence.'" *Compass Bank*, 104 F.Supp.3d at 1052-53. The party moving for spoliation sanctions under Rule 37 bears the burden of establishing spoliation by demonstrating that the non-moving party destroyed information or data and had some notice that the information or data was potentially relevant to the litigation before it was destroyed. *Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754, 766 (9th Cir. 2015); *see also Kitsap Physicians Serv.*, 314 F.3d at 1001.

## ANALYSIS

The evidence at issue on this motion relates to electronic schedule updates for The Fowler sent by ACCO to Roost between June 7, 2016, and January 5, 2018. (Dkt. 84-1.) During this period of time, Roost received schedule updates from ACCO only in a portable document format (".pdf"). Prior to June 7, 2016, the schedule updates were sent to Roost in a Microsoft Project format (".mpp").

Roost argues the .mpp files contain important schedule logic information and data that is not included in the .pdf versions of the schedule updates. Namely, information describing when revisions were made to the schedule or when delays were first identified.

MEMORANDUM DECISION AND ORDER - 4

That scheduling data was lost after June 7, 2016, Roost contends, because ACCO wrote over the .mpp files when making schedule updates without saving the native .mpp files of the prior schedule. (Dkt. 84.) ACCO disputes that the .mpp files were lost or destroyed and maintains Roost has not established that ACCO had a duty to preserve the native .mpp files or shown that spoliation sanctions are appropriate. (Dkt. 88.)

1.   **The Information Qualifies as ESI.**

The information Roost seeks and argues has been lost is the "schedule logic" contained in the native versions of the .mpp files and information correlating the .mpp files to each of the .pdf schedule updates actually provided to Roost. (Dkt. 84.) The .mpp files and data contained in the .mpp files constitute ESI for purposes of Rule 37.

2.   **The ESI Was Not Irretrievably Lost.**

Under Rule 37(e), information or data which should have been preserved is "lost" if it "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Here, the parties dispute whether information or data was irretrievably lost. Based on the record before it, the Court finds Roost has failed to satisfy its burden on this motion to show evidence was in fact destroyed or not preserved. *Colonies Partners*, 2020 WL 149644, at *5.

ACCO's practice for updating the project schedule involved ACCO making changes to the schedule and then executing a "print-to-PDF" command from the master schedule, renaming the attached master schedule with the current date, and then attaching that master schedule as a .pdf to the email sent to Roost. (Dkt. 36 at p. 47, ¶ 8) (Dkt. 36-4, Dec. Dixon, Ex. J.) If there was information contained in the .mpp file that was written

over and not included in the .pfd schedule updates provided to Roost or otherwise saved, it appears that information has been lost. Whether that occurred here, however, has not been shown.

It is undisputed that a number of .mpp files were provided during the course of discovery. Roost has not shown, however, that the schedule logic contained in the native .mpp files that was not included in the .pdf versions of the schedules is also missing from the .mpp files that have been produced in discovery. Roost maintains the information is lost because the .mpp files produced in discovery cannot be established as the actual schedule updates correlating to the .pdf files that were sent to Roost. (Dkt. 84-2 and Dkt. 96 at 8.) Based on the present record, the Court disagrees.

While ACCO concedes that it did not preserve data such that it can readily identify which .mpp files correlate to specific .pdf files in every instance, ACCO represents that no .mpp files were deleted or destroyed and that ACCO has produced every .mpp file in its possession, custody, or control to Roost. (Dkt. 88.) ACCO further represents that the .mpp files produced "include all relevant metadata which would enable Roost or its expert to see when any changes were made, and when each file was saved. Moreover, the .mpp files are dated, as were the [.pdf] files provided to Roost during construction." (Dkt. 88 at 6.) Roost disagrees with ACCO's characterization of the information contained in

the .mpp files that have been produced. (Dkt. 96.) At this stage, the Court takes ACCO's representations as true.[3]

Accordingly, the lack of data directly correlating every .mpp file to a specific .pdf file does not establish spoliation in the face of ACCO's representation that the files are dated and relevant metadata is contained in the .mpp files produced that "would enable Roost or its expert to see when any changes were made, and when each file was saved." (Dkt. 88 at 6.) The Court therefore finds Roost has failed to show the scheduling logic it contends was lost is not contained in the .mpp files that have been produced in discovery.[4]

The opinion of Roost's scheduling expert also does not demonstrate spoliation occurred. Warhoe's opinion addresses the alleged shortcomings of ACCO's scheduling practice and management of the project, and the impact it had on Roost's ability to monitor the project. Warhoe's opinions are relevant to prove Roost's claims, but do not establish that information has been irretrievably lost for spoliation purposes.

To the extent there are discrepancies between the .mpp and .pdf files and information contained within them, Roost may be able to explore those matters during

---

[3] If it is discovered that ACCO has misrepresented the information and data contained in the disclosed .mpp files, the Court may revisit this decision.

[4] This argument appears to touch on a possible discovery dispute over material that may or may not exist. To the extent there is a discovery dispute over the production of the correlating material, ACCO is directed to produce any correlating information Roost has requested to the extent it exists or provide a valid basis for not doing so.

MEMORANDUM DECISION AND ORDER - 7

trial. The disconnect between the .mpp files and .pdf files may be relevant to Roost's allegations that ACCO misrepresented, concealed, and failed to provided Roost with the necessary information of the project's status; failed to maintain information required under the terms of the Construction Agreement; and did not properly manage the project.

Based on the foregoing, the Court finds Roost has not met its burden to show evidence was lost. Alternatively, if it becomes clear that information or data was lost, the Court reserves ruling on whether ACCO's failure to preserve the native .mpp files warrants sanctions, as explained more fully below.

### 3. Duty to Preserve.

The duty to preserve arises when "litigation is reasonably foreseeable." Fed. R. Civ. P. 37, Advisory Committee Notes to the 2015 Amendment. "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Colonies Partners*, 2020 WL 149644, at *6. "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Id.* (quoting *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006)); *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("[S]imple notice of potential relevance to the litigation" is often sufficient to establish a duty to preserve information.); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) (A duty to preserve information arises when the party has "some notice that the documents are potentially relevant").

The parties here disagree over whether there was a duty to preserve the native .mpp files prior to the filing of this lawsuit and, if so, when the duty arose. The Court has reviewed and considered the materials referenced in the parties' briefing and arguments and finds litigation was reasonably foreseeable in May 2017, when the parties exchanged demand letters. (Dkt. 84-2.) At that point, the likelihood of legal action was evident.

The parties' already strained relationship had broken down and turned adversarial. Both parties had retained counsel who drafted and exchanged the May 2017 letters asserting the parties' positions, potential claims, and refuting the claims of the other. While the May 2017 letters mention the possibility of resolution, the assertions and demands made in the letters show litigation was contemplated by both sides and more than a mere possibility. (Dkt. 84-2.) For these reasons, the Court finds the duty to preserve relevant materials in anticipation of this litigation arose in May 2017.

**4.     Reasonable Steps to Preserve.**

A party engages in spoliation "only if [it] had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed." *Kitsap Physicians Serv.*, 314 F. 3d at 1001 (quoting *Akiona*, 938 F.2d at 161). A "party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business." *Ousdale v. Target Corp.*, No. 2:17-cv-2749-APG-NJK, 2019 WL 3502887, at *3 (D. Nev. Aug. 1, 2019) (citing *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009)).

Here, while it was foreseeable that project schedules and updates would be relevant to the parties' dispute, it is not clear to the Court that ACCO had notice that the native .mpp files themselves were potentially relevant to the litigation after May 2017. That is to say, it was reasonable for ACCO to have continued its practice of writing over the .mpp files and providing schedule updates in .pdf format to Roost after May 2017 when the duty to preserve arose.

Members of Roost's design team requested .pdf versions of schedule updates in the spring of 2016. (Dkt. 88-1, Dec. Graham, Ex. 1.) ACCO began sending only .pdf schedule updates in June 2016. Roost received the .pdf versions of the schedule updates without complaint for almost one year before any duty to preserve arose. Roost expressed no concern or objection to receiving the schedules in a .pdf file and did not request the correlating .mpp files at that time. The Court therefore finds, based on the record before it at this point in time, that ACCO did not have notice that it needed to change its schedule practices to preserve all native .mpp files after May 2017.

### 5. Prejudice

Roost seeks relief under Rule 37(e)(1) which allows the Court to fashion appropriate remedy upon finding prejudice that is no greater than necessary to cure the prejudice. Fed. R. Civ. P. 37(e)(1).[5]

---

[5] Notably, Roost does not seek relief under Rule 37(e)(2) which requires a finding that the party acted with the intent to deprive another party of the information's use in the litigation.

Roost argues it has been prejudiced by the loss of the native .mpp files, specifically the schedule logic lost from the .mpp files, because it will not be able to present a complete story to the jury regarding scheduling delays, ACCO's knowledge of the various delays, and ACCO's falsification of underlying schedule data that allowed it to represent an on-time delivery. (Dkt. 84, 96.) Further, Roost argues its expert could not fully evaluate the validity of the .pdf only schedules sent after June 7, 2016 without the native .mpp files. (Dkt. 84.)

The Court reserves its ruling on whether Roost suffered prejudice from spoliation, if any. That being said, Roost may explore the circumstances surrounding the native .mpp files at trial to the extent it is relevant to Roost's claims. For instance, Roost may offer evidence that information or data was not provided in the .pdf schedule updates that would have been included in the .mpp files and the impact that had on Roost's ability to monitor the status of the project. Evidence regarding the .mpp files, ACCO's scheduling practice and management, and the information, or lack of information, provided to Roost in the schedule updates are all relevant to Roost's claims.

Further, Roost's expert may comment on how his or her evaluation of the schedules and ACCO's overall project management was impacted by any lack of information. ACCO's expert may likewise testify regarding these topics. Each side will have the opportunity to challenge the testimony and evidence on cross examination and through its own witnesses. Roost may not, however, argue that ACCO destroyed or failed to preserve evidence, unless the evidence warrants such and the Court modifies this ruling during trial.

MEMORANDUM DECISION AND ORDER - 11

# **ORDER**

**THEREFORE IT IS HEREBY ORDERED** that Plaintiff's Motion for Sanctions due to Spoliation of Evidence (Dkt. 84) is **DENIED**.

DATED: October 26, 2020

_____
Honorable Candy W. Dale
United States Magistrate Judge